*JOHN BAKER v. HAMILTON H. STOW ET AL.

1. WORK ON OIL LEASE COMMENCED WITHIN SIX MONTHS AS PREREQUISITE TO EXTENSION OF TERM BY PAYMENT OF RENTAL.

   An oil lease providing that "operations * * * shall be commenced and one well completed within six months from the date hereof, and in case of failure to complete one well within such time" the lessees promise to pay "ten dollars per annum within three months after the time for completing such wells, * * * until one well shall be completed, and a failure to complete one well, or to make such payment * * * renders this lease null and void," requires the lessee to commence work upon the premises within such six months' period; paying the stipulated sum per annum, without commencing operations to sink a well, does not give lessees the option to sink a well or not as they choose.

2. PAYMENT OF RENTAL EXTENDS TERM ONE YEAR FROM TERMINATION OF SIX MONTHS' PERIOD.

   The provision of a gas and oil lease, that the annual rental shall be payable within three months after the six months during which a well was to be completed, extends the lease one year from the termination of the six months' period, and not from the additional three months' period.

---

*Seven important decisions of the Wood county circuit court determining controversies growing out of conflicting rights under gas and oil leases have been preserved by Ira C. Taber of the Toledo bar, formerly of the Wood county bar, and are here published for the first time.

Baker v. Stow.

## HAYNES, J.

The petition in this case was filed June 9, 1890, for the cancellation of a certain instrument known as an oil lease; afterwards on November 8, 1890, an amended petition was filed, setting up in detail the facts relied upon by the plaintiff for its cancellation; it appears by this petition that there were really three papers that the plaintiff was seeking to have cancelled. The first was a memorandum of agreement made on July 17, 1886, by one John Baker and E. A. James and J. Henline, and purports to be a lease on the John Baker premises for oil purposes, or more properly speaking, an agreement rather than a lease. That paper had been assigned so as to come into the hands of some of the defendants as lessees.

The petition further states that on October 26, 1889, Baker made another agreement to one Aaron Therwecter of Toledo, which is an agreement for oil purposes of the same premises; that on said date there was an agreement made between the plaintiff and Hamilton H. Stow which agreement relates to the sinking of wells and obtaining oil and gas upon the same premises. These papers it seems were held at the time of the filing of the suit by Van Vleck and Stow, the real parties defendant.

The petition avers that the parties have wholly failed to perform upon their part the things by them to be done, and that the time within which the agreement was to be performed had expired; that the rights of the parties had terminated, and asks for the cancellation of the instrument and an injunction against the lessees from further entering upon the premises and sinking wells, claiming they were making threats to do so.

All three of the leases are upon the same form, and contain the same covenants, the difference being in the date and perhaps the time which they are to run; one being for three years and one for five years on certain conditions. The defendants claim that they tendered the amounts that are stated in the petition by way of rent, and that they had the right to go on and sink wells.

Without going into a discussion of the material conditions of the covenants of the contract, I will say that they provide in substance, that in consideration of the covenants and agreements hereinafter named, the parties have granted, demised and let unto the parties of the second part, their heirs and assigns, for the purpose and with the exclusive right of drilling and operating for petroleum, oil and gas, all that certain tract or parts of land situate in Montgomery township, Wood county, and the state of Ohio, giving boundaries and description

of the premises; the parties of the second part, their heirs and assigns, to have and to hold the said premises, for the said purposes only, for and during the term of five years from date hereof, and as much longer as oil and gas is found in paying quantities.

The said parties of the second part in consideration of the said grant and demise, agree to give to the party of the first part the full equal one-eighth of all the petroleum oil obtained or produced on the premises herein leased, and to deliver the same in tanks or pipe lines to the credit of the party of the first part; and further on,

"Operations on the above described premises shall be commenced and one well completed within six months from the date hereof, and in case of failure to complete one well within such time, the parties of the second part agree to pay annually to the party of the first part for such delay, the sum of $10 per annum within three months after the time for completing such wells as above specified, payable directly to the party of the first part; and the party of the first part agrees to accept such sum as full consideration and payment for such yearly delay, until one well shall be completed, and a failure to complete one well, or to make such payments within such time as above mentioned, renders this lease null and void and to remain without effect between the parties hereto."

Now as to all these leases, it is admitted by the pleadings that no well was ever sunk upon the premises, and the simple question is, whether those leases are still in force and were, at the time the suit was commenced, which calls upon the court for a construction of those clauses that I have already read. We are very clearly satisfied that the true construction of this contract is,—That the parties are to commence a well within six months from the date of the contract. It is apparent from the reading of the contract that the parties were about to proceed to do that, which is, to a certain extent, uncertain as to results. It may be that no oil and gas will be found upon the property.

The testimony shows that the costs of sinking one of these wells is $1,000 to $1,500, or perhaps even more. If oil or gas is not found, of course that amount is lost to the party who sinks the well. There is a hazard in the business with reference to which the contract is undoubtedly made. The party who owns the land makes no expenditures, and he receives but a small portion of the oil that is found. From a reading of the contract, it is evident that the intention of the parties was that the work should commence in a short time,—the period fixed being six months.

### Baker v. Stow.

It will be noted that the terms of the contract are, that he shall pay the sum of $10 per annum within three months after the time for completing such well as above specified; and the party of the first part agrees to accept such sum as full consideration and payment for such yearly delay, until one well shall be completed, and a failure to complete one well, or to make such payments within such time as above mentioned renders this lease null and void. At the time they complete one well the rent, of course, terminates. That is the understanding of the parties, and he stands then the same as if he had completed the well within six months, and his rights under the lease from that time, depend upon the results of his investigations.

It will be seen that it is further provided that a failure to complete one well or to make such payment, renders this lease null and void. The construction claimed for this lease, as we understand it to be on the part of the lessees, is, that if they fail to sink a well within six months, by paying the sum stipulated in the instrument they have the right,—the option during the whole of the five years,—to commence work, or sink a well as they may choose; in other words that down payment of $10 a year for the use of these premises gives the lessees the option to sink a well or not as they choose.

We have held heretofore, and reiterate it in the present case, that the party must, in order to avail himself of his rights under the contract, commence work upon the premises within the period of six months.

If having done so, he shall fail to complete the well, then upon payment of the sum stipulated, he shall have the right to complete his well thereafter. That he shall proceed with reasonable diligence to finish his well—to carry out what is the intention of the parties. The intention of the lessor is to have his property investigated; to ascertain whether or not there is any oil on the premises so that he may have the benefit of it, and if there is not, that he may know it.

Now with that view of the case briefly stated: under the facts in this case, the two leases dated in 1888 are, in our opinion, in our judgment, null and void; that the rights of the parties have terminated under them, and the plaintff has the right to have the lease cancelled, and the parties enjoined from attempting to enter upon the premises under these leases.

The further question is made here upon the first lease, that is, the lease dated July 19, 1886, and was made originally between the plaintiff and E. A. James and J. Henline, which has been transferred

Wood County.

from party to party until, I believe, it is now claimed to be held by Van Vleck, the defendant in this case.

In that case there was no work commenced within the period of six months. The question in the case arises upon the action of the parties after the expiration of the six months.

This lease appears to have been on May 14, 1889, assigned by Henline to a man by the name of Evans, and on December 30, 1889, to have been assigned to a man by name of Huffman; there are other assignments which are said to have been made, but they are not in the lease itself.

It appears, however, that on April 12, 1887, that $10 was paid on the within lease as annual rental, and the receipt is signed by John Baker. Afterwards the defendant, Van Vleck, had negotiations with some parties for the purchase of this lease and their rights under it. It not appearing that this annual rent had been paid, he said he would not purchase it until the rent was paid, and thereupon the parties went to Baker and received from him a receipt which reads as follows:

"January 4, 1890. I hereby receive $20 the rental in full to April, 1890, on the within lease,—signed,—John Baker and witnessed by John Edmonds and Almon Baker."

It is said, however, that in fact no money was paid. Baker understood that this instrument was being assigned in order to enable the parties to negotiate the lease. They had then entered into negotiations to transfer the lease to Mr. Van Vleck, and he testified that he paid them, and paid them without any knowledge that this money had not been paid, and with full belief that the money had been paid Baker, and we think he stands as a *bona fide* purchaser of the lease, relying upon this paper as being a genuine receipt.

Since that time, no rents have been received by Baker. The rents have been tendered but he has declined to receive them.

This original suit was commenced June 9, 1890, for the purpose of cancelling this lease; now the question is, what are the rights of the parties under this state of facts?

The lease was dated July 17, 1886. The six months within which the work was to be done would have expired on January 17, 1887. At that time the plaintiff had the right, if he chose, to declare the agreement null and void, and to enforce its cancellation.

The parties if they had commenced work would have had the right within three months to have made a tender of the yearly rental, and it appears that April 12, being six days prior to the expiration of the

Baker v. Stow.

three months expiration of the six months, Baker received the $10 annual rental on the lease, and we think he must be held by so doing, to have waived to a certain extent the nonperformance of the agreement and the commencement of the work within six months. It appears that no rents were paid on the next year, and none were tendered, but that on January 14, 1890, the further sum of $20 was receipted for, and that the rental was to be to April 12, 1890. Now, right here, it appears that the parties were of the opinion that by the payment of the rent instead of being extended from the expiration of the six months, would be extended for a year from the time of the ending of the three months, or nine months from the expiration of the lease, and hence, they have said that this lease was conditioned until April 12, 1891, but we think a fair construction of the lease is, that by the payment of the $10 that it extended it only for a year from the expiration of the six months; that the real fact is that the lease was extended simply and purely to April 12, 1890, and no longer. The effect of that is to give them the right within a year to sink a well the same as if they had a right to sink within six months. If the parties did not do it within the expiration of the year, the lessor would have the right to declare the lease null and void; if he received rent for another year, he would have the right to extend it another year.

The lease was in fact kept alive until April 12, 1890, and no longer, and inasmuch as no work was commenced prior to April 12, 1890, the party had his option at that date to either receive another year's rent, or declare the lease null and void. He determined to declare the lease terminated and commenced suit to have the lease cancelled, and under this state of facts, we are of the opinion that he is entitled to a decree cancelling the lease, and the decree may therefore be entered accordingly, and the plaintiff recover his costs.

**Scribner** and **Bentley, JJ.**, concur.